IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DONNA C. GRAY, *ex rel.* her deceased son
Edmund Thomas Kulesza,

    Plaintiff,

v.                                                                                  No. 17-cv-0418 SMV

NANCY A. BERRYHILL,
**Acting Commissioner of Social Security Administration,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing or for Immediate Payment of Benefits, with Supporting Memorandum [Doc. 17] ("Motion"), filed on October 11, 2017. The Commissioner responded on December 11, 2017. [Doc. 19]. Plaintiff replied on January 8, 2018. [Doc. 22]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 8]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the evidence of Mr. Kulesza's onset date is ambiguous and, thus, remand is required to obtain the testimony of a medical advisor to assist in inferring the onset date. Accordingly, the Motion will be granted, and the case will be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

2

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

### Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five step sequential evaluation process ("SEP"). 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

## Procedural Background

The procedural history of this case is complicated by the fact that Mr. Kulesza filed more than one application for disability benefits and by the fact that he has passed away. Ultimately, the issue relevant to the appeal pending before the Court is whether Mr. Kulesza was disabled between the onset date alleged in his first application (April 22, 2009) and his date last insured (December 31, 2010).

Kulesza filed his first application for benefits (for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI")) on August 12 and/or 17, 2009. Tr. 152–58. He alleged a disability-onset date of April 22, 2009. Tr. 152, 156. His claims were denied initially, on reconsideration, and by an administrative law judge ("ALJ"). Tr. 76, 83, 20–28. The Appeals Council denied review on May 31, 2013. Tr. 1–6. Shortly after the Appeals Council denied review, on June 12, 2013, Kulesza filed a second application for benefits (for SSI only). *See* Tr. 379. That application was approved on August 2, 2013. *See* Tr. 307, 379. Kulesza was found disabled as of June 1, 2013, and he began receiving SSI benefits. *See* Tr. 379.

Around the same time as the filing of the second application, on August 1, 2013, Kulesza filed his first civil action in this Court, challenging the Commissioner's denial of the first application. This Court reversed the denial of the first application and remanded the case on February 25, 2015. Tr. 367–76; case number 13-cv-0710 SMV (D.N.M.). The Appeals Council, on April 28, 2015, remanded the case to an ALJ for further proceedings. Tr. 379–80. In its remand order, the Appeals Council recognized the second application (for SSI only), on which Kulesza had been found disabled as of June 1, 2013. Tr. 379. The Appeals Council, however,

indicated that the "period prior to June 1, 2013[,] requires further administrative proceedings." *Id.*

ALJ Ann Farris held the second hearing on May 10, 2016, in Albuquerque, New Mexico. Tr. 307, 330–49. Kulesza appeared in person with his attorney. *Id.* The ALJ heard testimony from Kulesza and an impartial vocational expert, Karen N. Provine. *Id.*

After the hearing but before the ALJ issued her decision, on September 14, 2016, Mr. Kulesza died. Tr. 307, 800. The ALJ issued her partially favorable decision on December 6, 2016. Tr. 323. Initially, she found that Kulesza met the insured status requirements through December 31, 2010. Tr. 310. At step one, she found that Kulesza had not engaged in substantial gainful activity since his alleged onset date. *Id.* Because Kulesza had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id.* There, she found that Kulesza's seizure disorder was severe, his depression was not severe, and his obesity was not a medically determinable impairment. Tr. 311–12.

The ALJ made two distinct step-three findings: one prior to July 1, 2012, and one beginning on July 1, 2012. Tr. 312–13, 320–22. She found that prior to July 1, 2012, none of Kulesza's impairments, alone or in combination, met or medically equaled a Listing. Tr. 312–13. However, she found that Kulesza's seizure disorder met the criteria for Listing 11.02B beginning on July 1, 2012. Tr. 320–22. Therefore, she found that as of July 1, 2012, Kulesza was disabled.

For the time period prior to July 1, 2012, she proceeded in the five-step sequential evaluation process. Because none of Kulesza's impairments met or medically equaled a Listing, the ALJ went on to assess Kulesza's RFC. Tr. 313–18. She found:

5

>that prior to July 1, 2012, the date [Kulesza] became disabled, [Kulesza] had the [RFC] to lift and/or carry 20 pounds occasionally and 10 pounds frequently. He could stand without limitation. He could walk for two hours out of an eight-hour workday with regular breaks. He could sit for six hours out of an eight-hour workday with regular breaks. He was unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying. He could never balance. He could never have exposure to hazards, such as unprotected heights and moving machinery. . . . [T]his was a limited range of work contained in the light exertional level as defined by 20 [C.F.R. §] 404.1567, 20 [C.F.R. §] 416.967 and [Social Security Ruling] 83-10.

Tr. 313.

At step four, the ALJ found that Kulesza was able to perform his past relevant work as an order clerk, Dictionary of Occupational Titles ("DOT") number 249.362-026. Tr. 318–20. Even though she was not required to do so, the ALJ proceeded to step five. There, she found that, prior to July 1, 2012, and based on Kulesza's RFC, age, education, and work experience and the testimony of the VE, Kulesza could perform work that exists in significant numbers in the national economy. Tr. 319–20.

Ultimately, the ALJ found that Kulesza was not disabled, as defined by the Act, prior to July 1, 2012, but that he became disabled as of that date. Tr. 322. However, because the ALJ found that Kulesza was not disabled on or before his date last insured (December 31, 2010), she denied the DIB claim. Because Kulesza had passed away with no acceptable substitute party (e.g., spouse), the ALJ dismissed his SSI claim. *Id.* Plaintiff, Mr. Kulesza's mother, filed the instant action on April 5, 2017,[3] rather than requesting review by the Appeals Council, as permitted by 20 C.F.R. §§ 404.984(d), 416.1484(d). [Doc. 1].

---

[3] The Court notes that Plaintiff was required to file her action in federal court within 60 days after notice of the ALJ's decision was mailed, *see* 42 U.S.C. § 405(g), plus an additional five days for mailing, 20 C.F.R. § 422.210(c). The ALJ's decision was mailed on December 6, 2016. Tr. 302. Adding five days for mailing, she had 65 days, or

6

<u>There was no error in the ALJ's applying the traditional five step SEP when she issued her December 2016 decision on the first application. However, once the ALJ determined that Plaintiff was disabled, she was required to determine his onset date.</u>

Plaintiff first argues that the ALJ erred in applying the traditional five step SEP. [Doc. 17] at 5. She argues that the finding (in the subsequent application) that Kulesza became disabled as of June 1, 2013, controls. As Plaintiff sees it, the ALJ in this case was bound by the subsequent finding of disability. She argues that the subsequent finding of disability (as of June 1, 2013) precluded application of the SEP and, instead, required the ALJ solely to determine Kulesza's onset date, pursuant to Social Security Ruling ("SSR") 83-20. [Doc. 22] at 2. Plaintiff goes on to argue that the evidence of Kulesza's onset date is ambiguous, and thus, pursuant to SSR 83-20, the ALJ was required to call a medical advisor to assist her in inferring the onset date. [Doc. 17] at 6–15.

Defendant does not respond to Plaintiff's arguments; she offers nothing about whether SSR 83-20 should or should not apply. Rather, she argues that under the traditional SEP, Kulesza failed to meet his burden to show that he was disabled on or before his date last insured, which is all that matters. [Doc. 19] at 3, 4, 6–8.

The Court finds that there was no error in the ALJ's applying the traditional five step SEP when she issued her December 2016 decision on the first application. She was not bound by the approval of Kulesza's second application. *See Jaramillo v. Colvin*, 184 F. Supp. 3d 1086, 1093 (D.N.M. 2015) ("[In arguing that SSR 83-20 is triggered by the approval of a subsequent application, the p]laintiff conflates her two applications and their respective but discrete

---

until February 9, 2017, to initiate her action in this Court. She did not file her action until April 5, 2017—55 days late. [Doc. 1]. However, the 60-day time limit in § 405(g) represents a statute of limitations, which is waivable. *Matthews v. Eldridge*, 424 U.S. 319, 328 n.9 (1976). It is not jurisdictional. *Id.* Because the Commissioner has not raised the issue, she has waived it. Thus, the Court will review the Motion on its merits.

adjudication periods."). The fact that Kulesza was found to be disabled as of June 1, 2013—in the subsequent application—did not trigger application of SSR 83-20 in lieu of the SEP in the first application. *See Jaramillo*, 184 F. Supp. 3d at 1092 ("Approval of a subsequent claim does not invade the period previously adjudicated by the ALJ decision.") (internal quotation marks omitted).

However, irrespective of Kulesza's subsequent application, the ALJ here determined as to *the first application* that Kulesza was disabled as of July 1, 2012. Although the finding of disability in the second application did not bind the ALJ, her own finding of disability as to the first application did bind her. Accordingly, she was required to determine his onset date pursuant to SSR 83-20.

<u>The evidence regarding Kulesza's onset date was ambiguous, and remand is required to obtain testimony from a medical advisor to assist in inferring an onset date.</u>

SSR 83-20 explains that the onset date for a disability of traumatic origin is simple to determine: the onset date is the date of the injury. 1983 SSR LEXIS 25, at *3. Determining the onset date for a disability of non-traumatic origin is more complicated. The ALJ should consider the plaintiff's allegations, his work history, and the medical and other evidence concerning impairment severity. *Id.* at *4. Sometimes, it is "impossible to obtain medical evidence establishing the precise date an impairment became disabling. . . . In such cases, it will be necessary to *infer* the onset date from the medical and other evidence." *Id.* at 5 (emphasis added).

An ALJ "may not make negative inferences from an ambiguous record; rather, [she] must call a medical advisor pursuant to SSR 83-20, 1983 SSR LEXIS 25." *Blea v. Barnhart*, 466 F.3d 903, 913 (10th Cir. 2006). The opinion testimony of a medical advisor is necessary so that there

8

is a "legitimate medical basis" for the inferred onset date. 1983 SSR LEXIS 25, at *6–7, 1983 WL 31249, at *3. "[T]he issue of whether [an] ALJ err[s] by failing to call a medical advisor turns on whether the evidence concerning the onset of [the plaintiff's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of his conditions." *Blea*, 466 F.3d at 912.

In this case, Plaintiff argues that the evidence of his onset date was ambiguous. [Doc. 17] at 14; [Doc. 22] at 1, 4–5. *See generally* Listing 11.02B[4] and SSR 87-6, 1987 SSR LEXIS 17, at *8–9 (elaborating on the requirements to meet Listing 11.02) (rescinded on March 3, 2017). There does appear to be evidence that could support a finding that Plaintiff's seizures met a listing prior to his date last insured (December 31, 2010). The record contains, *inter alia*: (1) the statement of Kulesza's former co-worker that in 2008 and 2009, the coworker observed Kulesza's having convulsions at work "about once per week," [Doc. 17] at 8–9 (citing Tr. 233); (2) Kulesza's own hearing testimony that he was missing work at 1-800-FLOWERS in 2008 and 2009, once or twice per week, due to seizures, Tr. 52; *see* Tr. 295 (list of dates Kulesza missed work at 1-800-FLOWERS); (3) the Seizure Questionnaire completed by Kulesza's mother on September 6, 2009, indicating that she herself had witnessed Plaintiff have at least one seizure per month (and four seizures during one month), Tr. 188–89. Finally, the Court notes that Kulesza's treating neurologist, Dr. Jain completed a "Medical Assessment of Seizure Disorder," on January 23, 2011, less than 60 days after Kulesza's date last insured. Dr. Jain documented that Plaintiff was having one to two grand mal seizures per month. Tr. 274. He further indicated

---

[4] 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02B ("Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C)").

that Plaintiff was having seizures more than once per week, despite at least three months of prescribed treatment. *Id.*

Defendant discusses the evidence contained in the record and concludes that it was reasonable for the ALJ find the evidence insufficient to establish disability prior to the date last insured. [Doc. 19] at 2–3, 6–7. Of course, the salient question is different, though. The issue is whether the evidence of Plaintiff's onset date was *ambiguous*. *See Blea*, 466 F.3d at 911 ("The ALJ's finding of residual functional capacity at step five does not mean that the ALJ can ignore the clear directives of SSR 83-20 [to determine the onset date], which is 'binding[.]'"). In other words, is there evidence in the record that could support a finding that the onset date was earlier than July 1, 2012 (or as a practical matter, on or prior to December 31, 2010)? The Court notes that Defendant does not argue that there is *no* evidence that Plaintiff's onset date was prior to July 1, 2012 (or prior to December 31, 2010). Rather, she merely argues that it was reasonable for the ALJ to find such evidence unpersuasive or insufficient. Her argument, therefore, seems to imply that the evidence is ambiguous.

Considering the record, and the evidence listed above in particular, the Court finds that Plaintiff meets her burden (as the movant before this Court) to show that the evidence of an onset date prior to Kulesza's date last insured (December 31, 2010) was ambiguous. Notably, Defendant does not dispute that the evidence is ambiguous. Accordingly, remand is required for the ALJ to consider the testimony of a medical advisor to assert her in inferring Kulesza's onset date, pursuant to SSR 83-20.

Plaintiff's request for remand for an immediate award of benefits should be denied because testimony from a medical advisor is needed to determine Kulesza's onset date. *See*

*Salazar v. Barnhart*, 486 F.3d 615, 626 (10th Cir. 2006) (explaining that one factor to consider in determining whether to remand for an immediate benefits is "whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits.") (brackets and internal quotation marks omitted). Importantly, Plaintiff did not argue—much less show—that the evidence of Kulesza's onset date was clear. She did not argue—much less show—that reasonable fact-finders would agree about Kulesza's onset date. Rather, Plaintiff explicitly argued that the evidence was ambiguous and that a medical advisor's expert opinion was required to assist in assessing that ambiguous evidence. The Court agrees. Therefore, remand for an immediate award of benefits is not warranted. Further proceedings are needed.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing or for Immediate Payment of Benefits [Doc. 17] **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**